May it please the Court, I would like to reserve half my time for rebuttal, if that's possible. Yes, certainly. I don't have a whole lot to add to what I have in my briefs. However, I would like to start by focusing on the first issue in the case, and that is the factual determination made by the California Supreme Court. And as I've suggested, I believe that decision is based solely on a mistake, on a finding of fact which is not supported by the evidence. The Court, in its opinion What is the finding of fact? What's the finding of fact? The finding of fact is Supreme Courts don't usually find facts. Well, they drew a conclusion and did, I believe they did find a fact in this case. They indicated that the testimony, the post-trial testimony in an in-camera hearing of Irene, the alleged victim in the case, proved that the vaginal injuries which the prosecution relied on heavily to establish Mr. Fontana's guilt could not have occurred through her admitted consensual sex shortly before the incident. Well, didn't the In that post-conference hearing, didn't a lower court make a factual finding that they accepted? Not really. The lower court, if you're referring to the trial court, the trial court, the scope of the hearing is limited to one of the vaginal injuries that the prosecutor relied on. It wasn't, that hearing completely ignored other injuries relied on by prosecution experts to establish guilt. Could I ask that? Go ahead. Are you done? I didn't answer the question, but I will very quickly. And that is that the trial court found that the testimony didn't help either side as to what the cause, whether the prior consensual sexual conduct with another person caused that injury. It didn't help either side. And that was the purpose of the hearing. Counsel, I've got a question once Judge Berzon had hers. Certainly. My question is this. I thought that the California court of appeals, which reversed originally, relied heavily on, and I thought it was discussed in the district court, but it's not in your briefs.  Well, it was the case that the defendant had said that originally that she was vaginally penetrated and that he ejaculated and then said otherwise, and that that went directly to her credibility and that this testimony would have gone much more, therefore, the testimony with regard to her sex with her boyfriend as relevant only to the corroborating evidence, medical evidence, and essentially nothing else, as I understand it. Well, I did raise another issue, and with regard to her prior claim that she was raped, rape wasn't charged in the case. And the ---- But you didn't raise the ---- I don't see that discussion in your briefs, and I thought you must have left it out for a reason. I'm trying to find out what the reason is. Because to me, it seemed important and persuasive, or more persuasive, in terms of why this testimony would have been, you know, could actually have debunked her credibility as opposed to just left things ---- I mean, it seems to me otherwise all you've got is the fact that the medical testimony doesn't do anything to help her, but it may not do anything to help the prosecution, but it may not hurt them either, so why is that so necessary? But ---- Well, if I'm understanding what you're talking about, what testimony you're talking about, the California Supreme Court refused, when they granted the hearing, did not include that. And I made a motion to try and include that particular issue, and it was not granted. So that issue was not briefed before the California Supreme Court. So what? So what? Well, I think that ---- well, also, the issue that I felt was most important, which is, I still would argue this to the Court, that the excluded evidence provides an innocent explanation for the injuries, the oral and the vaginal injuries, that the prosecution relied on to establish guilt of the offenses in this case, which were digital penetration and forced oral copulation. The jury did not hear anything about the fact that the victim had consensual sex, and those ---- and the California Supreme Court assumed and found that that sex occurred within a timeframe where ---- within a timeframe that could have been presented if ---- let me try it this way. What they found was that the evidence, the cross-examination that was excluded could have provided an alternative explanation for those injuries, which could have raised reasonable doubt in the jurors' minds. They found that ---- Counsel, Judge Gould, if Judge Gould, I want to ask you a question about that argument. Like, how would the sex with her boyfriend have explained the damage to the part of her tongue that was damaged, which an expert said could come from compulsory oral sex, to which she had testified? And how would the testimony about sex with her boyfriend have rebutted the evidence that she had bruises on her neck, which consistent with her story that she was strangled? That's two separate questions. Let me answer the first one. The two experts that the prosecution put on both admitted that either of these injuries could have been caused, both oral and vaginal, could have been caused by consensual sex. In the absence of being able to show that there was consensual sex which could have caused these injuries, the only conclusion that the jury could have drawn was that those injuries were caused by Mr. Fontana. And I think to me, that's the answer to that question. Well, in terms of your second question, I have argued mainly in the Brecht argument that, yes, it was evidence that this lady, excuse me, woman, was physically assaulted. But the issue in this case was whether she was sexually assaulted. Now, certainly, the injuries that you talk about are circumstantial evidence which the prosecution could argue were evidence of a sexual assault. Mr. Fontana had an explanation for that. I believe that the law requires that the jury decide whether or not she was sexually assaulted. That was the charge. And sexual assault, digital penetration, requires that. In this case, the allegation was that he penetrated her with his finger, vaginally. If you want to save your time for rebuttal, you have a minute left. Let me give you a little more.  Thank you. May it please the Court, Julia Jay for Respondent Appelli. Our position is that the excluded evidence in this case did not have a strong potential to demonstrate that Irene's testimony was false. Based on that, the record shows in the Supreme Court that the Supreme Court of California has not unreasonably applied U.S. Supreme Court precedent in this case. What about the direct credibility question that the California Court of Appeals largely relied upon? That is, why doesn't that go directly to her credibility, in that she originally said, I understand the part about he raped me, that could be maybe what happened. But then she said something to the effect of, he fucked me without a condom and I'm afraid I'm going to get AIDS. And then she apparently said to one of the medical people something similar, and then only later did she then say, well, I'm not sure. So why doesn't that go directly to her credibility, i.e., that her original claim was that she was raped in the traditional way, so to speak, and that she only later became vaguer about that? Because the claim was, because she realized that when they started doing swabs and stuff, that it would actually show that it was her boyfriend and not him. Doesn't that go directly to her credibility? Well, that those facts were presented to the jury. I think in the context of what happened and the events that she described, she was so brutally strangled, she fell into unconsciousness twice. But what wasn't presented to the jury was that she – that the story about her having been vaginally raped by him was – wasn't true. It wasn't necessarily true. I think it could also be viewed that because of the trauma that she experienced and the initial assault and the sexual assault, that all she could say, whisper to the hotel clerk, was that I've been raped. And she was so distraught that that's – and she couldn't – But she said something much more specific than that. And perhaps she believed that happened. She was in and out of consciousness during the event. But this is only a question of relevance in the Confrontation Clause. In other words, our question here is whether – I mean, the jury could have come to the same conclusion with that evidence. But as to the direct pertinence of that evidence to her credibility, why wasn't it quite directly relevant to her credibility? Well, the defense really focused on the fact that she had changed her story, and that's not what the record shows. It shows that she was more – she was able to explain what happened when the nurse at the rape trauma center asked her, did he do this, did he do that. But when she said that he infected me without a condom and I'm afraid I'm going to get AIDS, that's pretty specific. Well, that statement was presented to the jury through Shaik, who said the fight was over. But what wasn't presented to the jury was the fact that what the DNA evidence actually showed was that it was somebody else's semen. And why isn't that just directly relevant to whether she might have made up the story? Because there was other evidence showing that everything else was consistent with the assault that she alleged the felon perpetrated. Sure. It was consistent with it. That's not the issue. The DNA was actually very compelling. The strangulation, all the other physical harm, it was all her statements corroborated. Are you making a harmless error argument or an argument that it wasn't relevant? Ultimately, we're making a harmless error argument in this case because it is the most compelling and I think it can't be ignored. The felon has – he's not able to show that the error was not harmless. In fact, everything else points to the contrary. The error was harmless because the evidence was so abundant. It was so compelling that the Appellant Committee did sexual acts against her. Everything corroborated her statements. The physical evidence corroborated her statements. What was found by the police, her physical – other physical symptoms that were shown that were uncontroverted as extreme force using strangulation. There was obviously the photographs that were found of her nude looking very unhappy, showing the broken capillaries on her face. There was other compelling evidence. The DNA of his saliva that matched his – the saliva on her neck showed that he was lying, that he had never had sexual contact with her. And there was the entire defense that was completely rebutted, that he had this phobia about oral copulation, which was completely debunked by the testimony of his other assault victim, Nina, and his flight after the – the incident after the crime immediately running away from the police after he was contacted. There was so much evidence in this case that we heavily rely on the harmless error under Brett. So your primary argument is a correct argument. I'm sorry. So your primary argument is a correct argument. That's correct. Before you get to harmless error, though, you're first arguing that there's no confrontation clause violation, right? Yes, that's correct. That's our – we have both arguments because appellant in this case has to show both. He has to show both the constitutional error and he has to show that that error was not harmless. And on both points, we strongly believe the record supports our position. Okay, in terms of the first question, which I've been more focused on mentally, what's your best authority that a state can enforce a shield law that does not Well, in this case, we're dealing with California Evidence Code 782. And under that evidence code, evidence of prior sexual conduct by a victim can come in based on initial showing of relevance through a sufficient offer of proof. And the process is set out in the statute where if the trial court does find that there's sufficient offer of proof made as to the relevance of that evidence, then a hearing is conducted. Suppose this wasn't a – I'm trying to figure out what the standard is. Suppose this was an assault, a conviction, and he wasn't allowed to demonstrate that earlier in the day this woman had fallen and she could have gotten – she could have gotten the bruises that way, although she also could have gotten the bruises from the assault. I assume you could show that, no? Well, in that example, the court would consider does that evidence of her falling have a strong potential to demonstrate that her testimony was false in light of her entire testimony. Right. So here we have more than just the vaginal and oral injuries. We have much more physical evidence. We have statements corroborating her testimony. But in terms of at least negating reliance on the medical testimony, the medical testimony would have been consensual, and therefore demonstrating that she had the consensual sex seems parallel to demonstrating that she had fallen in the morning. So is the standard – what I want to know is this. Is the standard different because of the rape shield law? Do you have to show more than you would have to show to a higher degree of relevance than in the instance – and I don't know the answer to this – than in the instance where we were trying to demonstrate that she fell in the morning and at least negate the medical evidence that that's what caused – about the injuries? Well, in my view, it's the – it's the inquiry of whether it's a constitutional error that makes it – that makes the standard higher. It makes not – the standard's not just relevance, but it's strong potential to demonstrate falsity of the witness's testimony. And that's what the U.S. Supreme Court precedent is clearly established law in this particular issue. It goes beyond what a trial court would find under a State law evidentiary rule, and I think that's the standard that we should be applying here. It's the higher threshold of constitutional error that requires that this evidence be so crucial to defense that it was really a violation of the defendant's constitutional rights to exclude such evidence. That's the standard. Constitutional rights what? It was the exclusion of the evidence affected his constitutional rights. The standard should be that it's higher than just mere relevance under State law. Is that the standard for a confrontation clause or for precluding a defense, which are somewhat different? Most of the cases that we've briefed deal with a confrontation clause, but it's up to – you know, it's an open-ended question whether the right to present a complete defense is also part of that Sixth Amendment right. It's a general right to present evidence and to confront witnesses and cross-examine them, and I think that's part of the Sixth Amendment right. So I would say that the analysis covers both constitutional provisions. I ask you a question. Do you read the California Supreme Court decision as conceding that there was error and that the basis of its decision was lack of prejudice? I agree that the California Supreme Court in this case did find constitutional error to the extent that it referred to error as harmless beyond a reasonable doubt under Chapman, accepting that we rely on its final and ultimate decision that it was harmless error under Brett. If I follow you, I had a little trouble understanding or hearing. Your answer is that the California Supreme Court did find constitutional error, but found that it was not prejudicial or it was harmless. That's correct. I think the language is not entirely clear in the actual opinion, but the Supreme Court does use the language, it was harmless beyond a reasonable doubt. No, it certainly is not entirely clear, and I find this a remarkable opinion, a very unusual opinion in every respect, and I am amazed that three women on this Court concurred in this opinion without any comment. The physical descriptions seem to be based on some kind of understanding that I'm certainly not well aware of, but it's a remarkable discussion of everything from how the semen flows or standing on your head or hardly a clear legal exposition of the issues, and I would think the California Supreme Court would write a different opinion if it had a chance to do this again. But I agree with you that they did, in effect, find that there was constitutional error and the question was whether it was prejudicial, and that brings us to Brett. That's correct, Your Honor. Okay. Thank you. You're over time. Thank you, Your Honor. And thanks very much. I would like to briefly discuss Judge Berzon's question about the standard of proof. This case does not involve the Rape Shield Act. The Attorney General agreed before the California Supreme Court that 1103 didn't apply in this case, and that under the California Evidence Code, evidence to the hearing that was not held, that should have been held at the trial, the issue is whether the evidence is relevant. And if the evidence is relevant to attack the credibility of the victim under 782, which is kind of an ancillary Rape Shield law in California, if it's relevant to attack the credibility, then it is basically admissible. And that is our argument, that this evidence was admissible and that it was a denial of the right to cross-examination, to exclude cross-examination on that issue. And the standard that the other one is not. Well, how – I mean, if you're just focusing on the question of whether she could have been injured by the consensual sex, how does that affect her credibility? I mean, the worst thing it does is to wash out the – the – if she ever testified to this in cross-examination, it wouldn't have done anything to prove that she wasn't telling the truth. The only thing it would have done, except on my notion, but leaving that aside, if you're just focusing on the medical testimony, the only thing it would have done is made the medical testimony a wash, which is essentially what the California Supreme Court said. I mean, or the trial court said. It just makes the medical testimony a wash. Well, I don't think the trial court said that. The trial court excluded the evidence because it felt that the prosecution evidence was more powerful, whatever that means. I would suggest that it's very different. But I don't understand how – how – if you're relying on the right to cross-examine, how does it matter whether the medical testimony is – is – corroborates her less than it did before? It still doesn't say she's lying. Because when the trial lawyer, the lawyer who tried this case, got up in front of the defense attorney, argued the case, he argued that the medical evidence completely supported her credibility. And because of the lack of cross-examination, the defense lawyer was not able to get up and say, well, you can't rely on the medical testimony. Well, he could get up and say, but it could have been consensual assertion. He didn't say she did have consensual assertion. I'm basically a trial lawyer, Your Honor. So forgive me for what I'm about to say. But in that kind of situation, and I think one of the – either Fowler or Hawley – one of the cases I cited that stand for the similar type facts in terms of denial of the right to cross-examination. When a jury is presented, they're told not to speculate, but when they're presented with a prosecution argument that the medical evidence completely corroborates her testimony, and the defense has no answer to that other than, well, it could have been consensual. In the absence of evidence that there was consensual sex, I believe this circuit has held that it's prejudicial, because the jury is likely – the only logical conclusion they can draw is that, well, it was caused by these injuries, not by consensual sex. I mean, it basically excludes the possibility of the defense attacking the credibility on that basis. And you have to sit there, as in this case, basically, defense counsel had to sit there and couldn't say anything about that. I think that is significant prejudice in a case. Yes, there's a lot of evidence of a physical assault. But the reason we have juries is that they get to decide credibility. And I believe, and I would – I didn't want to say it because it probably wouldn't be appropriate for me to start off by saying that the California Supreme Court's opinion was a very strange opinion. I had to read it about 20 times in order to understand what they were really saying. And in order to write my brief in this case, I had to laboriously, and probably it was laborious for the Court to read, I had to deconstruct all those statements to point out the fact, again, where I start – I'll finish where I started. And that is that they said the purpose – they misstated the purpose of the post-trial hearing, and they misstated the scope of the post-trial hearing. And the reason that was done was the only way to reach a harmless error argument in this case. And to say that the error of the trial court really didn't matter, they used the word cured, I would suggest they needed a miracle cure, and that's what they found. And the facts of this case, the hearing that was held, does not cure that error. It really, in my humble opinion, really was a factual finding that is not based at all on the record in the court of appeals or in the trial court. Thank you. Thank you, Your Honor. Thank you. The case at Target will be submitted.
judges: REINHARDT, GOULD, BERZON